**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

FARMERS ALLIANCE MUTUAL
INSURANCE COMPANY, a Kansas Corporation,

      Plaintiff,

v.                                      CIV 06-0297 WPL/KBM

DONALD NAYLOR AND RAYMOND
ARMS,

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT NAYLOR'S MOTION FOR SUMMARY JUDGMENT**

Farmers Alliance Mutual Insurance Company provided fire insurance for Castle Rentals, a
furniture store located in Artesia, New Mexico. After a fire destroyed the building at the Castle
Rentals premises, Farmers hired Donald Naylor, of DNI, Inc., and Raymond Arms, an independent
engineer, to investigate the fire's origin. Farmers asserts that Naylor's and Arm's failure to preserve
several ballasts as evidence of the cause and origin of the fire constituted a breach of contract, breach
of implied warranty, and professional negligence. Naylor, in his Motion for Summary Judgment,
asserts that the economic loss rule bars Farmers' claim for negligence and that the breach of contract
and breach of implied warranty claims name the wrong defendant. (Doc. 8.)

I.     **Summary Judgment Standards**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

1

any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court examines the record and draws all factual inferences in a light most favorable to the non-moving party. *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). The moving party bears "'the initial burden to show that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Thomas v. I.B.M.*, 48 F.3d 478, 484 (10th Cir. 1995)). If the moving party meets this initial burden, "it falls to the [non-moving party] to 'identify specific facts that show the existence of a genuine issue of material fact.'" *Id.* (quoting *Thomas*, 48 F.3d at 484). In demonstrating the existence of a genuine issue of material fact, the non-movant may not rely on "the mere allegations or denials" asserted in the party's pleading. FED. R. CIV. P. 56(e). Rather, through affidavits, depositions, answers to interrogatories, or further affidavits, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.*

II.     **Facts**

    A.     **Background Facts**

        On March 25, 2002, a fire occurred at Castle Rentals, a strip-mall furniture store located in Artesia, New Mexico. Subsequently, Farmers, which provided fire insurance for Castle Rentals, hired Donald Naylor, of DNI, Inc., and Raymond Arms, an independent engineer, to investigate the fire's cause and origin. According to Farmers, Naylor and Arms were informed that ballast-controlled fluorescent lights had illuminated the Castle Rentals property and that Naylor and Arms visually inspected the ballasts.[1] Approximately two weeks after the fire, however, the ballasts were "taken as debris and discarded." (Doc. 1, Ex. A at 2.)  Farmers asserts that the ballasts were "central to a

---

      [1] Ballasts, according to the Merriam-Webster dictionary, are "device[s] used to provide the starting voltage or to stabilize the current in a circuit (as of a fluorescent lamp)." http://www.m-w.com/dictionary/ballasts.

determination of what insurance claims were to be paid, and an issue in any lawsuit involving an insurance claim for fire damage." (*Id.* at 3.) According to Farmers, arson provided a possible explanation of the fire at the Castle Rentals premises. The owners of Castle Rentals, in contrast, asserted that the defective ballasts were to blame. Without the ballasts, Farmers alleges that it was unable to demonstrate that arson, and not the defective ballasts, lay at the fire's origin. (Doc. 1, Ex. A at 2-3.)

B.  **Farmers' Business Relationship with Naylor**

Naylor is a fire cause-and-origin investigator and has been licensed in New Mexico since 1982. In 2000, Naylor founded DNI, Inc., a New Mexico corporation in the business of conducting fire cause-and-origin investigations. Following the fire at Castle Rentals, Farmers and Naylor orally agreed that Naylor would investigate the cause and origin of the fire at the Castle Rentals premises. DNI billed Farmers on DNI's letterhead on two occasions; on April 15, 2002, DNI billed Farmers the sum of $6,864.08, and on September 10, 2002, DNI billed Farmers the sum of $259.55. The name "Don Naylor" appears at the bottom of these bills. Farmers' check written to pay the April 15th bill was made out to "Don Naylor, CFI." This check was deposited in DNI's corporate bank account. Farmers' check written to pay the September 10th bill was also deposited in DNI's corporate bank account. (Doc. 8, Ex. A at 1-2, Doc. 14, Ex. A, Attach. 1-4.)

III.  **Discussion**

In his Motion for Summary Judgment,[2] Naylor asserts two arguments.[3] First, Naylor contends

---

[2] Naylor failed to comply with D.N.M.LR-Civ. 56.1(b), which requires a party to file a memorandum in support of a motion for summary judgment.

[3] In their briefings, the parties exchange arguments regarding a claim for spoliation. As Naylor points out in his Motion for Summary Judgment, however, "Plaintiff's complaint does not allege any independent tort

that the economic loss rule bars Farmers' claim for professional negligence. According to Naylor, the economic loss rule prevents a contract claim from "masquerading" as a tort claim when the alleged damages constitute solely economic loss. Second, Naylor argues that Farmers' claims for breach of contract and breach of implied warranty name Naylor individually, not DNI, and thus fail to name the correct party.

### A.    The Economic Loss Rule Does Not Necessarily Bar Farmers' Negligence Claim Against Naylor.

Naylor, in his Motion for Summary Judgment, contends that the economic loss rule bars Farmers' recovery for Naylor's alleged professional negligence. Although courts in New Mexico recognize the economic loss rule, Naylor's Motion for Summary Judgment presents legal issues that New Mexico courts have not had the opportunity to address.  These legal issues are: (1) whether the economic loss rule applies to service contracts under New Mexico law; and (2) whether New Mexico courts would recognize a professional negligence exception to the economic loss rule that includes the actions of a certified fire investigator, such as Naylor, performed pursuant to an agreement with another party.

The economic loss rule "provides that a plaintiff may not recover in tort for losses that are purely economic, i.e., not involving personal injury or property damage." *Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1269, 1270 (M.D. Pa. 1990). The economic loss rule "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract . . . ." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). The New Mexico

---

of spoliation of evidence." (Doc. 8 at 5.) Although Farmers, in its Response, seeks to assert spoliation as a separate claim, I conclude that Farmers' Complaint fails to provide "a short and plain statement" of the claim of spoliation. FED. R. CIV. P. 8(a)(2).

Court of Appeals adopted the economic loss rule in *Utah International, Inc. v. Caterpillar Tractor Co.*, 775 P.2d 741, 744 (N.M. Ct. App. 1989), where the Court held that "in commercial transactions, when there is no great disparity in bargaining power of the parties, economic losses from injury of a product to itself are not recoverable in tort actions; damages for such economic losses in commercial settings in New Mexico may only be recovered in contract actions." *Id.* at 744. In a decision endorsing the Court of Appeals' adoption of the economic loss rule, the New Mexico Supreme Court observed that "[a]s a matter of policy, the parties should not be allowed to use tort law to alter or avoid the bargain struck in the contract. The law of contract provides an adequate remedy." *In re Consol. Vista Hills Retaining Wall Litig.*, 893 P.2d 438, 446 (N.M. 1995).

Naylor seeks to apply the economic loss rule to bar a claim for professional negligence arising out of a service contract between Farmers and Naylor's principal, DNI. Although the Supreme Court of New Mexico expressly adopted the economic loss rule in *In re Consolidated Vista Hills Retaining Wall Litigation,* no state court in New Mexico has yet had the opportunity to decide whether the economic loss rule applies to service contracts. Naylor contends that under established law in New Mexico, the economic loss rule bars Farmers' claim for professional negligence arising out of the service contract. Resort to established New Mexico law, however, does not conclusively yield the answer Naylor seeks. Because New Mexico courts have not had the opportunity to decide whether the economic loss rule applies to service contracts, I must attempt to construe New Mexico law on this issue in light of controlling state law precedent and persuasive authority from foreign sources.

1.      **Service Contracts**

Although the economic loss rule originally applied to transactions in goods between parties in commercial settings, a number of courts have applied the rule to a wide range of commercial

transactions. R. Joseph Barton, Note, *Drowning in a Sea of Contract:  Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims*, 41 WM. & MARY L. REV. 1789, 1802 (2000) ("Although the rule originated in the context of products liability, the current trend expands the rule to apply in other contexts, most notably in real property transactions and service contracts."). Courts' use of the economic loss rule in construction agreements provides an example of the rule's application outside of the products liability context. In *Sun Co., Inc. v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 372-73 (E.D. Pa. 1996), for example, the district court applied the economic loss rule to a construction agreement between two commercial parties. In doing so, the court recognized that the economic loss rule, despite its origins in product liability law, was well suited to transactions in other commercial settings. *Id.* at 372-73.  Several factors motivated the court's decision.  First, the court noted that the plaintiff alleged no harm beyond "disappointed expectations and dissatisfaction with Defendants' performance of the Contract's terms." *Id.* at 371. Second, the court recognized that "[t]he absence of personal injury and property damage in the instant context [] prevents the invocation of tort law . . . ." *Id.* at 371-72. Because the plaintiff asserted a loss of "only the economic benefit of the bargain" the court concluded that "principles of contract, not tort law, should govern . . . ." *Id.* at 374.

Similarly, courts have also applied the economic loss doctrine to bar negligence claims arising out of service contracts. *See, e.g.*, *Maine Rubber Int'l v. Envtl. Mgmt. Group, Inc.*, 295 F. Supp. 2d 125, 129-30 (D. Me. 2004) (holding the economic loss rule applicable to a service contract between two commercial entities). For example, in *Anderson Electric Inc. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 247 (Ill. 1986), the Supreme Court of Illinois applied the economic loss doctrine to a service contract where a manufacturer of electrical units agreed to inspect the plaintiff's work on the

units. The plaintiff claimed that he suffered economic losses as a consequence of the manufacturer's negligent inspection of his work. *Id.* at 249. The Illinois Supreme Court held that the economic loss rule barred the plaintiff's negligence claim because the plaintiff alleged only economic losses arising out of frustrated commercial expectations. *Id.; see 2314 Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346, 353 (Ill. 1990) (applying the economic loss rule to bar a negligence claim against an architect because the architect's responsibility originated with the contract).

Legal precedent in New Mexico indicates that the economic loss rule extends beyond the limited context of products liability law and applies to service contracts. New Mexico decisions applying the economic loss rule to products liability cases emphasize that the rule "preserve[s] the line between contract law and tort law." *In re Consol. Vista Hills Retaining Wall Litig.*, 893 P.2d at 446. The legal and policy considerations that motivated New Mexico courts to adopt the economic loss rule in the products liability context apply equally to service contracts. *See Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 514 (Ill. 1994) ("The policy interest supporting the ability to comprehensively define a relationship in a service contract parallels the policy interest supporting the ability to comprehensively define a relationship in a contract for the sale of goods."). In the products liability context, the economic loss rule enables parties in a commercial setting to establish their expectations as part of the bargain. As the New Mexico Court of Appeals in *Utah International* observed, "[t]he buyer may bargain for additional warranties from the seller and pay a higher price, or may forego warranty protection entirely in order to obtain a lower purchase price." 775 P.2d at 744. New Mexico courts have adopted the economic loss rule to the products liability context "in order to allow commercial parties to freely contract and allocate the risk

of defective products as they wish." *Id.* Similarly, parties to service contracts realize the same commercial benefits from the economic loss rule as parties to contracts for the sale of goods. The economic loss rule enables parties to a service agreement to freely contract, allocate risk based on the contractual agreement, and obtain a purchase price that reflects the contractual bargained-for exchange.

Additionally, New Mexico decisions emphasizing the clear distinction between tort and contract law indicate that New Mexico courts would apply the economic loss rule to service contracts. New Mexico has "long followed the rule that 'the difference between a tort and contract action is that a breach of contract is a failure of performance of a duty arising or imposed by agreement; whereas, a tort is a violation of a duty imposed by law.'" *Kreischer v. Armijo*, 884 P.2d 827, 829 (N.M. Ct. App. 1994) (quoting *Tamarac Dev. Co. v. Delamater, Freund & Assoc., P.A.*, 675 P.2d 361, 363 (Kan. 1984)). In *Kreischer*, the plaintiff brought a claim for gross negligence arising out of the defendant's "grossly willful, wanton, and negligent" construction work. *Id.* The Court of Appeals of New Mexico, in upholding the lower court's dismissal of the plaintiff's claim for gross negligence, observed that "[t]he obligation to properly construct the house [] was created by the contract and was not an obligation imposed by law." *Id.*; *see Congregation of the Passion, Holy Cross Province*, 636 N.E.2d at 514 ("Just as a seller's duties are defined by his contract with a buyer, the duties of a provider of services may be defined by the contract he enters into with his client. When this is the case, the economic loss doctrine applies to prevent the recovery of purely economic loss in tort."). Although the court did not invoke the economic loss rule, the decision illustrates New Mexico courts' commitment to the distinction between tort and contract law. Applying the economic loss rule to service contracts reflects this commitment. In light of this state law precedent, I conclude

that under New Mexico law, when the parties to an agreement are sophisticated commercial entities, the economic loss rule applies both to contracts for services as well as to contracts for the sale of goods.

### 2.   Exception to the Economic Loss Rule for Professional Negligence

My decision that the economic loss rule applies to service contracts does not end my inquiry into the economic loss rule's application to Naylor's Motion for Summary Judgment. Due to Farmers' claim for professional negligence against Naylor, I must determine whether the economic loss rule, as applied to service contracts, also bars negligence claims arising out of an agreement to provide professional services.

Unlike buyers and sellers of goods, who are able to contractually define the expectations arising out of the commercial relationship, service providers are often licensed professionals who owe to their customers a duty of care that exists apart from the contractual agreements underlying their commercial relationship. The Supreme Court of Utah has held that "[w]hen an independent duty exists, the economic loss rule does not bar a tort claim 'because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.'" *Hermansen v. Tasulis*, 48 P.3d 235, 240 (Utah 2002) (citing *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1263 (Colo. 2000)). Similarly, the New Mexico Supreme Court has observed that "[w]hen professional services arising from contract are substandard, a plaintiff may bring a cause of action for malpractice based on negligence or for breach of contract arising from the breach of the implied warranty to use reasonable skill." *Adobe Masters, Inc. v. Downey*, 883 P.2d 133, 134 (N.M. 1994). Because I am bound by state law, I conclude that although the economic loss rule applies to service contracts, the rule does not bar tort claims arising from an independent duty of care. Accordingly, the economic loss

9

rule does not bar Farmers' claim for professional negligence against Naylor provided that Farmers is able to demonstrate that Naylor, as a certified fire investigator, qualifies as a professional under New Mexico law. *Cf. Lewis v. Rodriguez*, 759 P.2d 1012, 1014-15 (N.M. Ct. App. 1988) (determining whether a polygraph examiner "is a 'professional' and therefore subject to certain professional standards"). Because the parties failed to analyze whether New Mexico law holds certified fire investigators to professional standards of care, Naylor's Motion for Summary Judgment as to Count III of Farmers' Complaint must be denied.

> B.   **Farmers' Breach of Contract and Breach of Implied Warranty Claims Name the Wrong Defendant.**

Naylor's Motion for Summary Judgment asserts that Farmers' breach of contract and breach of implied warranty claims name the wrong defendant. Naylor argues that Farmers' suit should have been brought against DNI, not against Naylor in his individual capacity. To support his Motion for Summary Judgment on these claims, Naylor sets out two arguments. First, Naylor contends that the oral contract was between Farmers and Naylor in his capacity as an agent for DNI. Second, Naylor relies on the longstanding rule of corporate law that "shareholders, directors and officers are not personally liable for the acts and obligations of the corporation." *Stinson v. Berry*, 943 P.2d 129, 133 (N.M. Ct. App. 1997). Naylor contends that his "work as a fire cause and origin investigator has been conducted in his capacity as a member/principal investigator/founder of DNI, Inc. and not in his individual capacity." In their briefings, the parties appear to conflate these two separate theories of individual liability. To avoid confusing the "key distinction between corporate law and the law of agency," *Lambert v. Kazinetz*, 250 F. Supp. 2d 908, 914 (S.D. Ohio 2003), I will analyze each claim separately.

10

1.      **Agency Law**

Under the law of agency, an agent who enters a contract "for an undisclosed principal or a partially disclosed principal will be liable as a party to the contract." *Saliba v. Dunning*, 682 A.2d 224, 226 (Me. 1996) (citing RESTATEMENT (SECOND) OF AGENCY §§ 321, 322 (1958)); *see Otero v. Wheeler*, 701 P.2d 369, 372 (N.M. 1985) ("It is generally established law that when an agent signs his own name and fails to disclose the fact that he is acting for a principal, the agent alone is bound by the contract."); *Kreischer*, 884 P.2d at 831 ("Generally, an agent for a disclosed principal is not a party to any contract entered into on behalf of the principal."). The "[p]laintiff ha[s] the burden of showing that Defendant was a party to the contract." *Id.* (citing RESTATEMENT (SECOND) OF AGENCY § 320 cmt. b (1958)). As the Restatement of Agency makes clear, "[t]his initial burden is satisfied if the plaintiff proves that the defendant has made a promise, the form of which does not indicate that it was given as agent." RESTATEMENT (SECOND) OF AGENCY § 320 cmt. b.

These long-standing principles of agency law govern Naylor's Motion.  If DNI was an undisclosed principal during the negotiation between Naylor and Farmers, then Naylor would be personally liable on the oral contract entered into between Naylor and Farmers. Whether or not DNI was a disclosed principal during the course of the contractual negotiations between Naylor and Farmers is, therefore, an essential element in Farmers' claim against Naylor.

Under Rule 56(c) of the Federal Rules of Civil Procedure, to sustain a motion for summary judgment the moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "[S]ummary judgment cannot be granted merely because a nonmovant fails to submit affidavits or other materials supporting existence of a genuine issue of material fact." *Regents of the Univ. of N.M. v. Knight*, No.

CIV 99-577-JC/WWD, 2000 U.S. Dist. Lexis 22376, at *15 (D.N.M. Sept. 20, 2000). Rather, "[t]he movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). A party "that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.*

Exhibit A to Naylor's Motion for Summary Judgment is Naylor's affidavit, in which Naylor attests that Farmers, through an oral agreement, "retained DNI's services to conduct a fire cause and origin investigation at the premises of Castle Rentals in Artesia, New Mexico." (Doc. 8, Ex. A at 2.) Naylor states that "I would not have entered into a written contract committing me to perform such services in my individual capacity, rather it would have had to have been styled as between the Plaintiff and DNI, Inc." *Id.*

Naylor's statements establish a prima facie showing "of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Thom*, 353 F.3d at 851. Specifically, Naylor's statement that Farmers "retained DNI's services" to investigate the fire's origin presents a prima facie showing that DNI was a disclosed principal and that Naylor was merely DNI's agent and not an independent party to the contract. Accordingly, Naylor's affidavit satisfies his burden under Rule 56(c).

Because Naylor met his prima facie burden under Rule 56(c), the burden shifts to Farmers, the non-moving party, to "set forth specific facts showing that there is a genuine issue for trial." FED R. CIV. P. 56(c). "To avoid summary judgment, the party opposing the motion must establish, at a

minimum, an inference of the existence of each essential element to the case." *Foster v. AlliedSignal Inc.*, 293 F.3d 1187, 1192 (10th Cir. 2002) (citing *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). Summary judgment will "be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial." *Viernes v. Executive Mortgage, Inc.*, 372 F. Supp. 2d 576, 579 (D. Haw. 2004). To meet this burden, "the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The non-moving party may not "rest upon the mere allegations or denials of the adverse party's pleading . . . ." FED. R. CIV. P. 56(e).

Farmers, which bears the burden of showing that Naylor was party to the contract, fails to demonstrate facts sufficient to establish this essential element of its case. *See Kreischer*, 884 P.2d at 831. To satisfy its burden of showing that Naylor was a party to the contract, Farmers must prove that Naylor "made a promise, the form of which does not indicate that it was given as agent." RESTATEMENT (SECOND) OF AGENCY § 320 cmt. b. Farmers fails to establish the existence of facts sufficient to satisfy this burden. Farmers' Response offers, as its only evidence on the issue of Naylor's individual liability, a photocopy of an email reflecting payments to Naylor in the amounts DNI billed Farmers for services rendered. (Doc. 11, Ex. A.) Farmers appears to rely on this exhibit to demonstrate that Naylor was paid for his services as an individual. Even if this were sufficient to establish the existence of an essential element of its case—that Farmers contracted with Naylor in his individual capacity—the evidence in its present form is not admissible on a motion for summary judgment. *See Conoco Inc. v. J.M. Huber Corp.*, 148 F. Supp. 2d 1157, 1166 (D. Kan. 2001) ("[T]he court may disregard facts supported only by references to documents unless the parties have

13

stipulated to the admissibility of the documents or the documents have been authenticated by and attached to an affidavit meeting the requirements of Rule 56(e).").  "[B]usiness records, which normally would be admissible at trial under the hearsay exception set forth at [Rule 803(6) of the Federal Rules of Evidence], may be considered only if authenticated by a person through whom the exhibits could be admitted into evidence." *IBP, Inc. v. Mercantile Bank of Topeka*, 6 F. Supp. 2d 1258, 1263 (D. Kan. 1998).  The "Business Records" exception under Rule 803(6) of the Federal Rules of Evidence provides that a business record meeting the requirements of Rule 803(6) must be accompanied by the "testimony of the custodian or other qualified witness . . . ." Fed. R. Evid. 803(6). Testimony of a custodian or other qualified witness did not accompany Farmers' Exhibit A. The exhibit, therefore, was not "authenticated by a person through whom the exhibit[] could be admitted into evidence." *IBP, Inc.*, 6 F. Supp. 2d at 1263. Accordingly, Exhibit A may not be considered as evidence in a motion for summary judgment.

Additionally, the check from Farmers to "Don Naylor, CFI" accompanying Naylor's Reply fails to present facts sufficient for Farmers to establish that Naylor "made a promise, the form of which does not indicate that it was given as agent." Restatement (Second) of Agency § 320 cmt. b. The name "Don Naylor, CFI" on a check from Farmers is not sufficient to establish that Naylor was a party to the contract. It thus fails to present facts sufficient to establish an essential element of the case.

In his Motion for Summary Judgment, Naylor offers affirmative evidence, in the form of a sworn affidavit, that DNI was the party to the contract. Farmers fails to present countervailing evidence, either through affidavit or otherwise, that Naylor, and not DNI, was the party to the contract. Hearsay evidence in the form of an inadmissible photocopy fails to establish this essential

14

element of Farmers' case. Nor does a check written out to a company's president establish this element. Accordingly, Farmers fails to establish an inference of the existence of an essential element in its claim that Naylor is personally liable under an agency theory of liability.

### 2.    **Corporate Law—Piercing the Corporate Veil**

Naylor's Motion for Summary Judgment seeks dismissal of Counts I and II of Farmers' Complaint on the alternative ground that Farmers cannot pierce DNI's corporate veil and hold Naylor personally liable. As a general rule of corporate law "shareholders, directors and officers are not personally liable for the acts and obligations of the corporation." *Stinson v. Berry*, 943 P.2d 129, 134 (N.M. Ct. App. 1997). To pierce the corporate veil and hold the shareholders, directors, or officers liable, a plaintiff must establish three elements: (1) instrumentality or domination; (2) improper purpose; (3) and proximate cause. *Garcia v. Coffman*, 946 P.2d 216, 219 (N.M. Ct. App. 1997) (citing *Harlow v. Fibron Corp.*, 671 P.2d 40, 43 (N.M. Ct. App. 1983)).

To support his Motion for Summary Judgment, Naylor, in his sworn affidavit, asserts that DNI, a New Mexico for-profit corporation, "is in the business of conducting fire cause and origin investigations." (Doc. 8, Ex. A at 1.) Naylor asserts that DNI "is properly capitalized" and operates for "the purpose of conducting fire cause and origin investigations." (Doc. 8, Ex. A at 1.) Moreover, Naylor states that DNI "maintains separate financial accounts and records, pays its taxes, files separate tax returns, maintains a separate bank account, maintains workmans compensation insurance, conducts regular meetings of its principals, and otherwise complies with New Mexico law governing corporate operations." (Doc. 8, Ex. A at 1.)

Naylor's Motion for Summary Judgment satisfies his burden under Rule 56(c). Naylor presents evidence sufficient to negate the three essential elements necessary to Farmers' attempt to

pierce the corporate veil. First, Naylor's affidavit establishes that DNI adhered to corporate formalities and that DNI was operated "in a legitimate fashion to serve the valid goals and purposes of that corporation" and not "under the domination and control and for the purposes of some dominant party." *Garcia*, 946 P.2d at 220. This evidence negates the "instrumentality" element necessary to pierce the corporate veil. Second, Naylor negates the "improper purpose" element of corporate piercing doctrine by presenting evidence that the corporation was properly capitalized and not established for an improper purpose (Doc. 8, Ex. A at 1). *See Garcia*, 946 P.2d at 220-21 (finding an improper purpose where principal shareholder used the corporate form as part of "a scheme to generate income through the provision of unnecessary medical services"). Third, Naylor's Motion for Summary Judgment negates the "proximate cause" element necessary to pierce the corporate veil. Under the proximate cause test, "[i]t is sufficient to show some knowing or cooperative effort between the related parties which results in unjust injury to the plaintiff, even though it may not be possible to prove that the defendant's control directly caused the plaintiff's injury." *Id.* at 221. Nothing in the record links Naylor's corporate status with Farmers' alleged injury.

Farmers' Response fails to establish "an inference of the existence of each essential element to the case." *Foster*, 293 F.3d at 1192 (citing *Hulsey*, 43 F.3d at 557). In its Response, Farmers presents only a photocopy of an email describing payments Farmers had made to Naylor. Even if this evidence is sufficient to establish the essential elements in a piercing analysis, the evidence, in the form presented, is not admissible. *See IBP, Inc.*, 6 F. Supp. 2d at 1263 ("[A] party cannot rely on unauthenticated documents to avoid summary judgment."). Accordingly, Farmers fails to establish an inference of the existence of the elements necessary to pierce DNI's corporate veil and hold Naylor personally liable.

IV.     **Conclusion**

Naylor fails to demonstrate that the economic loss rule applies to Farmers' claim for professional negligence. For this reason, I deny Naylor's motion to dismiss Count III of Farmers' Complaint. Additionally, I conclude that Farmers should have filed suit against DNI, not against Naylor individually. Accordingly, I grant Naylor's Motion for Summary Judgment as to Count I and II of Farmers' Complaint.

IT IS SO ORDERED.

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE